[Cite as *State v. Shepherd*, 2014-Ohio-827.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99959**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAYMOND J. SHEPHERD

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-570663-A

**BEFORE:** Keough, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 6, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By: Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brad S. Meyer
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Raymond Shepherd, appeals his robbery conviction, which we reverse for the reasons that follow.

{¶2} In 2012, Shepherd was charged with kidnapping in violation of R.C. 2905.01(A)(2) and aggravated robbery in violation of R.C. 2911.01(A)(1). Each charge carried one - and three-year firearm specifications. Shepherd waived his right to a jury, and the trial proceeded before the bench, where the trial judge heard the following evidence.

{¶3} In the early morning hours of July 14, 2012, Librae Cohen placed a telephone call to Kenneth Washington suggesting a particular sexual encounter for $400. Washington agreed to meet Cohen at her apartment. When he arrived at her apartment building, he called Cohen to tell her that he was there. Cohen asked Washington if he would buy her a soda pop, which he agreed to do. When he arrived back to Cohen's apartment building, he called her again. While he waited for Cohen to come to the front entrance to let him in, a tall, dark-skinned man stuck his head out the door, looked around, said "that ain't my ride," and went back inside.

{¶4} After another phone call, Cohen told Washington to enter the apartment building and go to an apartment on the third floor, instead of her apartment on the seventh floor. Washington rode the elevator to the third floor. As he stepped off the elevator, a gun was placed to the right side of his head, behind his ear. Washington testified that as the gun was placed to his head, the person holding the gun tapped it against the back of

his head. Washington testified that he only saw the gun; he did not see who was holding the gun. Washington immediately laid on the ground, face down, begging the person not to kill him, and to just take the money. According to Washington, it felt like the person was waiting for him and he "knew she set me up." Washington then placed the money on the floor and the person ran off down the hall. Washington testified that as the person ran away, he could see that the person was a male wearing a white t-shirt and jeans.

{¶5} As soon as the male ran off, Washington got up, ran down the stairs, called Cohen, and accused her of getting "him robbed," which Cohen denied. Washington repeatedly called Cohen accusing her of robbing him. According to Washington, Cohen then told him that the police had caught a male in a white t-shirt and blue pants; however, Washington did not believe her.

{¶6} Later that day, Washington went to the police station and reported the robbery. After several months, he received notice that the police had a suspect. According to Washington, when he told Cohen about the suspect, she said the police caught the person "because of her."

{¶7} On cross-examination, Washington admitted that he felt like the male at the apartment building who came to the front entrance was watching and looking for him. However, he testified that the male was not Shepherd. Additionally, he admitted that he did not see who robbed him and never identified Shepherd as the person who robbed him.

{¶8} Cohen testified that Washington was a client of hers for six to eight months and that she knew Shepherd through mutual friends. According to Cohen, Shepherd

knew that she was a prostitute and that Washington was one of her clients. She admitted that she entered into a plea agreement with the state and agreed to testify against Shepherd.

{¶9} According to Cohen, Shepherd orchestrated the plan to rob Washington. She testified that Shepherd told her to call Washington to arrange an encounter and "make it believable." According to Cohen, part of the plan was to get Washington to the third floor of the apartment building. Cohen testified that she told Washington to go to the store to buy her a soda pop because she was hoping to stall Shepherd's plan.

{¶10} However, after she told Washington to come to the third floor, Shepherd left her apartment on the seventh floor. Cohen assumed he went to the third floor because when he returned 15 minutes later he gave her $200 and then left. Cohen testified she started receiving phone calls from Washington accusing her of setting him up and robbing him. Cohen stated she lied to Washington stating that the police had apprehended a male wearing a white t-shirt and jeans, hoping he would just "leave it alone."

{¶11} After learning that she was wanted by the police for questioning in connection with the robbery, she gave a statement to the police and agreed to place a phone call to Shepherd, hoping he would incriminate himself. The recorded phone call was played before the court. During the course of the conversation, Cohen repeatedly stated she was scared about what would happen if Washington went to the police. While Shepherd's responses were at times incoherent and inaudible, at the end of the recording Shepherd stated that there were not any cameras on "that floor" because "he checked,"

and that there were only cameras in the lobby. Additionally, when Cohen questioned whether he smacked Washington, Shepherd respond "no."

{¶12} Following the close of evidence, the trial court found Shepherd not guilty of kidnapping. The trial court also found Shepherd not guilty of aggravated robbery, but guilty of the lesser included offense of robbery, without firearm specifications, in violation of R.C. 2911.02(A)(1). Shepherd was sentenced to three years in prison.

{¶13} Shepherd now appeals, raising two assignments of error.

## I. Lesser Included Offense

{¶14} In his first assignment of error, Shepherd contends that the trial court committed error and denied him his right to a fair trial and a verdict supported by the evidence as protected by the Sixth and Fourteenth Amendments and by the Ohio Constitution, Article I, Section 10 when it found him guilty of robbery in violation of R.C. 2911.02(A)(1) as a lesser included offense of aggravated robbery in violation of R.C. 2911.01(A)(1).

{¶15} The indictment charged Shepherd with aggravated robbery in violation of R.C. 2911.01(A)(1), which provided that Shepherd

> did, in attempting or committing a theft offense, as defined in section 2913.01 and 2913.02 of the Revised Code, or in fleeing immediately after the attempt or offense upon Kenneth Washington did have a deadly weapon, to wit: gun, on or about their person or under their control and either displayed the weapon, brandished it, indicated that they possessed it, or used it.

{¶16} When rendering the verdict, the trial court stated: "As to Count 2, aggravated robbery, the Court's going to find him guilty of the lesser-included offense without the gun specifications; robbery in violation of R.C. 2911.02(A)(1)."

{¶17} R.C. 2911.02(A)(1) provides that "no person, in attempting or committing a theft offense or in fleeing immediately thereafter the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control."

{¶18} A two-step analysis is conducted to determine when a factfinder is permitted to consider a lesser included offense: "(1) is the offense a lesser included offense of the charged offense, and (2) could the trier of fact reasonably find the defendant not guilty of the charged offense, but convict the defendant of the lesser included offense." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6.

{¶19} Shepherd contends that this charge of robbery was not available as a lesser offense of aggravated robbery as indicted. Shepherd concedes on appeal that robbery in violation of R.C. 2911.02(A)(1) is a lesser included offense of aggravated robbery as defined in R.C. 2911.01(A)(1) as provided under the law; however, the facts do not support a lesser-included finding; thus, not satisfying the second tier of the *Deanda* analysis.

{¶20} In order to convict Shepherd of the lesser included, the court had to believe that Shepherd had the gun in his possession or under his control, but did not display, brandish, indicate possession, or use it. The only testimony presented about the actual robbery was that of the victim. Washington testified that when he stepped off the

elevator, a gun was immediately placed to the right side of his head behind his ear. He further testified: "[h]e hit me on the back of my head, like a tap with the gun." Washington responded to these actions by immediately lying down on the ground face down. He testified that he "glanced" and all he saw was "the gun." Although Cohen testified that Shepherd denied hitting Washington, the evidence was that Shepherd displayed, brandished, and used the gun during the commission of the offense.

{¶21} The testimony, if believed is sufficient to support the indicted charged of aggravated robbery and the verdict that Shepherd was guilty of robbery. But a lesser offense may not be considered merely because the defendant could be found guilty of the offense. It may only be considered when the evidence is such that the defendant could reasonably have been found not guilty of the greater offense but guilty of the lesser offense. The evidence in this case does not make that possible.

{¶22} In *State v. Huber*, 8th Dist. Cuyahoga No. 93923, 2011-Ohio-62, ¶ 19, this court found that the trial court did not abuse its discretion in not giving a jury instruction on robbery as a lesser included offense of aggravated robbery because the evidence that the knife had been held against the victim's throat was sufficient to prove the brandishing element of aggravated robbery as charged under R.C. 2911.01(A)(1). The jury could not have found defendant not guilty of aggravated robbery and guilty of robbery, since robbery under R.C. 2911.02(A) would have nonetheless been based on the presence of the knife as a deadly weapon.

**{¶23}** Much like in *Huber*, the trial court in this case could not reasonably find Shepherd not guilty of aggravated robbery and guilty of robbery, since robbery would have nonetheless been based on the display and brandishing of the gun as a deadly weapon. Accordingly, the court erred in finding Shepherd guilty of robbery in violation of R.C. 2911.02(A)(1) as a lesser included offense of aggravated robbery in violation of R.C. 2911.01(A)(1) because the evidence did not reasonably support both acquittal of the greater offense and conviction of the lesser offense. Therefore, the guilty verdict of robbery was improper.

**{¶24}** Because the conviction on the lesser offense serves as an implied acquittal on the greater offense, Shepherd's conviction for robbery is overturned and the case is dismissed. *See State v. Fanning*, 8th Dist. Cuyahoga No. 89914, 2008-Ohio-2185, ¶ 20 (because defendant was not indicted for the offense he was found guilty of and because it is not a lesser-included offense of the indicted offense, the conviction must be vacated); *State v. Green*, 8th Dist. Cuyahoga No. 89326, 2008-Ohio-228, ¶ 21.

**{¶25}** The assignment of error is sustained. Having sustained Shepherd's first assignment of error, his second assignment of error regarding effective assistance of counsel is rendered moot.

**{¶26}** Judgment reversed. Case remanded for the trial court to vacate Shepherd's conviction, dismiss the case, and order Shepherd discharged from prison.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR